UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Matt M. Dispensa

      v.                                Civil No. 19-cv-556-LM
                                        Opinion No. 2020 DNH 086

National Conference of
Catholic Bishops et al.

**O R D E R**

Proceeding pro se, Matt M. Dispensa brings this action against the National Conference of Catholic Bishops[1] (the "Conference"), Cardinal Daniel Nicholas DiNardo (in both his individual capacity and his official capacity as the President of the Conference), the Archdiocese of Boston[2], Cardinal Sean P. O'Malley (in both his individual capacity and his official capacity as Archbishop of the Archdiocese), Father Jon C. Martin, and 100 fictitiously named Doe defendants.  In essence, Dispensa alleges that he suffered sexual abuse at Fr. Martin's

---

[1]Appearing in this action in lieu of the National Conference of Catholic Bishops (the "NCCB") is its successor entity, the United States Conference of Catholic Bishops (referred to herein as the Conference), which formed when the NCCB combined its operations with the United States Catholic Conference on June 27, 2001.

[2]The Archdiocese is formally referred to as the Roman Catholic Archbishop of Boston, a Corporation Sole.

hands while he was a minor child, and that the other defendants[3] wrongfully concealed that abuse from the public and from prosecuting authorities.

At the center of Dispensa's action, therefore, are his claims asserted against Fr. Martin under New Hampshire common law for sexual abuse of a minor and for assault.  Dispensa also asserts the vicarious liability of the Conference, the Archdiocese, Cardinal DiNardo, and Cardinal O'Malley for Fr. Martin's torts, as well as those defendants' direct liability under state law for the negligent retention of Fr. Martin as an employee.

Arising out of the alleged concealment of Fr. Martin's abuse, Dispensa asserts two claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") against the Conference, the Archdiocese, and Cardinal O'Malley, a claim against the Archdiocese for concealing a felon in violation of 18 U.S.C. § 1001(a), and a claim against the Archdiocese styled as conspiracy in violation of 18 U.S.C. § 371.  Under New Hampshire law, Dispensa additionally asserts claims against all

---

[3]The exception to this statement is Cardinal DiNardo. Cardinal DiNardo is not alleged either to have concealed Fr. Martin's abuse or to have conspired to do so.  Dispensa's theory of Cardinal DiNardo's liability appears to be predicated entirely on Cardinal DiNardo's position as the current President of the Conference.

defendants for breach of fiduciary duty, fiduciary fraud and conspiracy to commit fiduciary fraud, and intentional infliction of emotional distress.  Finally, Dispensa asserts a state-law claim against the Archdiocese and Cardinal O'Malley for fraud and conspiracy to commit fraud.

Now before the court are three motions to dismiss.[4]  First, Cardinal DiNardo moves in his individual capacity to dismiss Dispensa's claims against him for lack of personal jurisdiction. Second, the Conference and Cardinal DiNardo in his official capacity (collectively, the "Conference defendants") move to dismiss all of Martin's claims against them for lack of personal jurisdiction, and to dismiss his state-law claims for lack of subject-matter jurisdiction.  Third, the Archdiocese and Cardinal O'Malley in both his individual and his official capacities (collectively, the "Archdiocesan defendants") move to dismiss all of Martin's claims against them for insufficient service of process, for lack of personal jurisdiction, and for improper venue, and to dismiss his state-law claims for lack of subject-matter jurisdiction.  Although the court has twice extended Dispensa's deadline to respond—once upon the parties'

---

[4]Of the named defendants, only Fr. Martin has not moved to dismiss Dispensa's claims.

unopposed motion and once <u>sua</u> <u>sponte</u>—Dispensa has filed no objection to any of the three motions.

**BACKGROUND**

What follows is a summary of Dispensa's allegations.

Since not later than 1960, the Conference, the Archdiocese, and Cardinal O'Malley have been aware that Catholic priests were sexually abusing children in dioceses across the United States. Despite their knowledge of widespread sexual abuse by priests, those defendants did nothing to prevent further such abuse, but instead conspired to conceal it.  Over a period of many years, the Conference, the Archdiocese, and Cardinal O'Malley routinely concealed sexual abuse by Catholic priests by maintaining secret records of the abuse, entering into confidential settlements with abuse victims, obstructing civil and criminal investigations of abuse by Catholic clergy, and knowingly allowing priests who were known serial sexual predators of minors to serve in positions of authority over minor children.

Dispensa was raised in Andover, MA, where he and his family regularly attended religious services at St. Roberts Bellarmine Church (the "Church").  Dispensa's family was devoutly Catholic and "heavily involved" in activities at the Church.  Dispensa attended day school at the Church, was a member of a Church

4

youth group, and served as an altar boy at the Church.  Fr. Martin was an Associate Pastor at the Church from June 1973 through May 1981.

While Fr. Martin was a pastor at the Church, and while Martin was a minor child, Fr. Martin used and manipulated his position of respect and authority as pastor and priest to obtain Dispensa's unquestioning trust and obedience.  From 1975 through 1980, Fr. Martin abused Dispensa's trust and obedience by sexually abusing and assaulting him.  Fr. Martin instructed Dispensa not to report the abuse.  As a result of Dispensa's unquestioning trust in and obedience to Fr. Martin, Dispensa was unable to understand the wrongfulness of Fr. Martin's conduct until April 1981, when he reported it to his parents.

Church officials assured Dispensa's parents that the abuse Dispensa had suffered had been an "isolated occurrence," and the Conference, the Archdiocese, and Cardinal O'Malley took unspecified actions to conceal it from Dispensa's family, the public, and prosecuting authorities.  Nevertheless, Fr. Martin was removed from his position at the Church in May 1981.

As a result of the trauma he suffered and the betrayal of his trust, Dispensa repressed his memories of Fr. Martin's abuse for an unspecified period of time.

**DISCUSSION**

I.   **Sufficiency of Service on the Archdiocesan Defendants**

Dispensa attempted to serve the Archdiocese and Cardinal O'Malley by mailing one copy of the summons and complaint to both defendants via certified mail.  The envelope containing the summons and complaint was addressed to Cardinal O'Malley at the Archdiocese's principal place of business, in Braintree, MA.  The Archdiocesan defendants received Dispensa's mailing.

The Archdiocesan defendants do not argue that such service failed to provide them with actual knowledge of this action or of Dispensa's claims.  Nevertheless, the Archdiocesan defendants argue that Dispensa's service efforts were insufficient for purposes of Federal Civil Procedure Rule 4.

A.   **Legal Standard**

Motions to dismiss for insufficient service of process are governed by Federal Civil Procedure Rule 12(b)(5).  Under Rule 12(b)(5), objections to the validity of service of process must be specific and must identify with particularity the manner in which the plaintiff has failed to satisfy the service requirements.  See Taite v. Bridgewater State Univ., 236 F. Supp. 3d 466, 472 (D. Mass. 2017) (citing 2 Moore's Federal

Practice § 12.33[1] (3d ed. 2013)); see also, e.g., O'Brien v. R.J. O'Brien & Assocs., 998 F.2d 1394, 1400 (7th Cir. 1993).

Once the objecting party has properly challenged service of process, the burden shifts to the serving party to prove that service was sufficient. Rivera-Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992). A docketed return of service generally creates a rebuttable, prima facie presumption that service was sufficient. Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008). The challenging party may rebut the presumption through presentation of evidence, and the serving party may either present countervailing evidence or seek a stay of proceedings pending discovery and/or an evidentiary hearing. Id. at 112-115. Where evidence establishes the insufficiency of service, courts enjoy broad discretion either to dismiss an action entirely for failure to effect service or to quash the defective service and permit re-service, meanwhile retaining the case. See Henderson v. United States, 517 U.S. 654, 662 (1996); see also, e.g., Ramirez De Arellano v. Colloides Naturels Int'l, 236 F.R.D. 83, 85 (D.P.R. 2006).

**B.  <u>Analysis</u>**

Before a federal court may exercise jurisdiction over a defendant, that defendant must first be properly served with

process under Rule 4.  See United States v. Carr, Case No. 2:11-CV-00280-GZS, 2012 WL 1109611, at *2 (D. Me. Mar. 2, 2012; see also, e.g., Direct Mail Specialists v. Eclat Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted).  This is not because service of process is itself a jurisdictional requirement, but rather because proper service is instead the mechanism through which exercise of jurisdiction is effected.  Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987).

### 1.  **Sufficiency of Service on the Archdiocesan Defendants**

Under Rule 4, a plaintiff may serve a corporate defendant[5] by following the law governing service of either the state where the district court is located (here, New Hampshire) or the state where the defendant is located when service is made (here, Massachusetts).  Fed. R. Civ. P. 4(h)(1)(A), 4(e)(1).

Under New Hampshire law, service on a foreign corporation is accomplished, inter alia, by mailing a copy of the summons and complaint by registered or certified mail to the corporate secretary at the principal office listed in the corporation's

---

[5]In his official capacity, the Archbishop of the Archdiocese and the Archdiocese are one and the same.  See, e.g., Zani v. Phandor Co., 281 Mass. 139, 145 (1932); see also doc. no. 15-3 at 1.

most recent annual report.  RSA 293-A:15.10.  Although Cardinal
O'Malley is not the corporate secretary of the Archdiocese,
Dispensa substantially complied with the requirements of Section
293-A:15.10 when he sent the summons and complaint via certified
mail to Cardinal O'Malley at the Archdiocese's principal
address.  Moreover, as a matter of federal procedural law, minor
formal defects in service may be disregarded so long as the
defendant receives actual notice of the complaint and the method
of service is in substantial compliance with the requirements of
Rule 4.  See Precision Etchings & Findings, Inc. v. LGP Gem,
Ltd., 953 F.2d 21, 23-25 (1st Cir. 1992) (citations omitted).
Here, it is undisputed that the Archdiocesan defendants actually
received the summons and complaint as a result of Dispensa's
service efforts.  The Archdiocesan defendants' motion to dismiss
is therefore denied as to the Archdiocese and Cardinal O'Malley
in his official capacity.[6]

---

[6]Because service on these defendants was sufficient under
Rule 4(e)(1) and (h)(1)(A) by reference to New Hampshire law,
the court need not consider whether service could also have been
sufficient under Rule 4(h)(1)(B) or by reference to
Massachusetts law.

**2.**   **Sufficiency of Service on Cardinal O'Malley in his Individual Capacity**

Rule 4 also sets forth the requirements governing service on an individual defendant.  A plaintiff may serve an individual by delivering a copy of the summons and complaint to the individual personally, by leaving a copy of the summons and complaint at the individual's usual place of abode with a person residing there of suitable age and discretion, or by delivering a copy of the summons and complaint to an authorized agent for receiving such service.  Fed. R. Civ. P. 4(e)(2).  In the alternative, a plaintiff may serve an individual by following the law governing service of either the state where the district court is located (here, New Hampshire) or the state where the defendant is located when service is made (here, Massachusetts). Fed. R. Civ. P. 4(e)(1).

New Hampshire law provides for service on a nonresident individual defendant through sending the summons and complaint to the defendant's last known abode or place of business through registered mail, then providing proof of such mailing, together with a statutory fee and further copies of the summons and complaint, to the New Hampshire Secretary of State.  RSA 510:4(II).  The requirements for service on an individual under Massachusetts law are substantially identical to those of federal Rule 4(e)(2).  Mass. R. Civ. P. 4(d)(1).

Here, Dispensa's service efforts were not compliant with
federal or Massachusetts law in that Dispensa did not deliver
the summons and complaint to Cardinal O'Malley personally, to
his usual place of abode, or to any person authorized to accept
such service.  Fed. R. Civ. P. 4(e)(2); Mass. R. Civ. P.
4(d)(1).  Dispensa's efforts were likewise noncompliant with New
Hampshire law, in that there is no evidence of record to suggest
that Dispensa provided the New Hampshire Secretary of State with
the requisite process and proof of mailing, or that he paid the
required statutory fee.  RSA 510:4(II).

For these reasons, the Archdiocesan defendants' Rule
12(b)(5) motion is granted as to Cardinal O'Malley in his
individual capacity.  Moreover, as explained below, this court
could not properly exercise personal jurisdiction over Cardinal
O'Malley in connection with Dispensa's claims in this action
even if he had been properly served.  It would thus be futile to
grant Dispensa an opportunity to cure the identified defects in
service.  Dispensa's claims are therefore dismissed without
prejudice to the extent pled against Cardinal O'Malley in his
individual capacity.

11

## II.   **Personal Jurisdiction**

All sets of moving defendants—Cardinal DiNardo in his individual capacity, the Conference defendants, and the Archdiocesan defendants—move to dismiss Dispensa's claims for lack of personal jurisdiction.  Defendants argue that each of them lacks the requisite contacts with New Hampshire.  The Conference defendants and Archdiocesan defendants further argue that the ends of justice do not require them to be haled into court in this state.

### A.   **Legal Standard**

"To hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009) (internal citation and quotations omitted).  Where, as here, a defendant challenges personal jurisdiction through a motion under Federal Civil Procedure Rule 12(b)(2), the plaintiff has the burden to establish that the court may properly exercise such jurisdiction.  See Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008); GT Solar Inc. v. Goi, Case. No. 08-cv-249-JL, 2009 WL 3417587, at *2 (D. N.H. 2009); ICP Solar Techs., Inc. v. TAB Consulting, Inc., 413 F.Supp.2d 12, 14 (D. N.H. 2006).  Allegations of jurisdictional facts are

construed in the plaintiff's favor.  ICP Solar, 413 F.Supp.2d at 14.

There are several appropriate methods for determining whether a plaintiff has met the burden to establish personal jurisdiction over a defendant, the "most conventional" of which (at the pleading stage of a proceeding) is the prima facie method.  See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (citations omitted).  The prima facie method requires the court to consider "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Boit v. Gar-Tec Prod., Inc., 967 F.2d 671, 675 (1st Cir. 1992).  The court applies the prima facie method here.

Under the prima facie standard, courts "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

> To make a prima facie showing of [personal jurisdiction over a defendant], the plaintiff ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts. . . . [T]he district court acts not as a factfinder, but as a data collector.  That is to say, the court, in a manner reminiscent of its role when a motion for summary judgment is on the table, . . . must accept

the plaintiff's (properly documented) evidentiary
proffers as true for the purpose of determining the
adequacy of the prima facie jurisdictional showing.

Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145
(1st Cir. 1995).  The plaintiff is thus ordinarily obliged to
rely on specific facts supported by record evidence to defeat a
defendant's motion to dismiss for lack of personal jurisdiction.
See ICP Solar, 413 F.Supp.2d at 14.  The court may also consider
uncontested facts submitted by the defendant.  See Mass. Sch. of
Law, 142 F.3d at 34.  The court does not assess credibility or
engage in other "differential factfinding."  Foster-Miller, 46
F.3d at 145.  "Despite the liberality of this approach, the law
does not require [the court] . . . to credit conclusory
allegations or draw farfetched inferences."  Mass. Sch. of Law,
142 F.3d at 34 (internal quotations omitted).


   B.   **Analysis**

   "Personal jurisdiction implicates the power of a court over
a defendant."  Foster-Miller, 46 F.3d at 143.  The outer limits
of that power are bounded by the requirements of federal
constitutional due process.  Ins. Corp. of Ir. v. Compagnie Des
Bauxites De Guinee, 456 U.S. 694, 702 (1982).  Personal
jurisdiction may exist pursuant to federal statute, see United
States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 36 (1st Cir. 1999),

14

or pursuant to the forum state's long-arm jurisdiction law, see
Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).

Here, as noted, Dispensa asserts civil RICO claims against
the Conference, the Archdiocese, and Cardinal O'Malley.  As
discussed below, most courts to have considered the question
have found that the RICO statute contains a broad grant of
personal jurisdiction over civil RICO defendants.  Because,
however, the court's analysis of personal jurisdiction under
RICO depends in part on whether long-arm jurisdiction exists
over at least one RICO defendant, the court begins its analysis
with long-arm personal jurisdiction.  Following its discussion
of long-arm jurisdiction, the court turns to statutory personal
jurisdiction under RICO.

## 1.   __Long-Arm Personal Jurisdiction__

Where no federal statute governing personal jurisdiction is
at issue, the district court looks to the jurisdiction law of
the forum state.  See, e.g., Sawtelle, 70 F.3d at 1387.  New
Hampshire's long-arm personal jurisdiction statute creates a
standard co-extensive with federal jurisdictional standards, so
a federal court sitting in the District of New Hampshire may
exercise personal jurisdiction wherever it is possible to do so
within the limits of federal constitutional due process.

15

Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 287 (1st Cir. 1999), see also Phelps v. Kingston, 130 N.H. 166, 171 (1987).

Constitutional due process generally requires that the exercise of personal jurisdiction over a defendant "be 'consistent with traditional notions of fair play and substantial justice.'" D'Almeida v. Stork Brabant B.V., 71 F.3d 50, 51 (1st Cir. 1995) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Specifically, the due process clause of the Fourteenth Amendment "prohibits a court from imposing its will on persons whose actions do not place them in a position where they reasonably can foresee that they might be called to account in that jurisdiction." Phillips Exeter, 196 F.3d at 287 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The court's analysis of jurisdictional fairness centers on the quality and quantity of the defendant's contacts with the forum state. See id. at 288. Where jurisdiction over multiple defendants is at issue, the court analyzes each defendant's contacts with the forum separately. Calder v. Jones, 465 U.S. 783, 790 (1984).

Two forms of personal jurisdiction can apply to a nonresident defendant: general and specific. Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010). Here, it is

16

unclear from the allegations of Dispensa's complaint which form
of personal jurisdiction he intends to rely on.  Accordingly,
the court considers the potential applicability of both forms of
personal jurisdiction to each of the moving defendants.

General jurisdiction exists over a defendant when the
defendant has "engaged in continuous and systematic activity" in
the forum state, without regard to whether the claims against
the defendant arise out of the defendant's forum-directed
contacts.  Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994),
quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d
1080, 1088 (1st Cir. 1992).  General jurisdiction will attach
only where the plaintiff establishes that the defendant's
affiliations with the forum "are so continuous and systematic as
to render it essentially at home" there.  Daimler AG v. Bauman,
571 U.S. 117, 139 (2014) (citation and internal quotation marks
omitted); see also Goodyear Dunlop Tires Operations, S.A. v.
Brown, 564 U.S. 915, 924 (2011) (paradigmatically, an individual
defendant is at home in a forum if domiciled there, and a
corporate defendant is at home in a forum if the forum is its
place of incorporation or the seat of its principal place of
business).

Specific jurisdiction, by contrast, arises when a claim
against a defendant "relates sufficiently to, or arises from, a

17

significant subset of contacts between the defendant and the
forum." Phillips Exeter, 196 F.3d at 288.  To establish the
existence of specific jurisdiction in connection with a given
claim, a plaintiff must show that the claim arises directly out
of specific contacts between the defendant and the forum state.
Sawtelle, 70 F.3d at 1389.  The courts apply a "flexible,
relaxed standard" in determining whether the plaintiff has met
its burden to establish relatedness.  Pritzker, 42 F.3d at 61.

     In connection with both general and specific jurisdiction,
the plaintiff bears the additional burden to establish that the
defendant's contacts with the forum were purposeful.  Baskin-
Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28,
35 (1st Cir. 2016).  This requires the plaintiff to show that
the defendant "deliberately targeted . . . behavior toward the
society or economy of a particular forum such that the forum
should have the power to subject the defendant to judgment
regarding that behavior." Id. at 36 (internal quotation marks
and modifications omitted) (quoting Carreras v. PMG Collins,
LLC, 660 F.3d 549, 555 (1st Cir. 2011)).  The function of the
purposeful availment inquiry is to ensure that the defendant
will not be subjected to jurisdiction in a foreign forum "based
solely on random, isolated or fortuitous contacts." Id.
(citations and internal quotation marks omitted).  Accordingly,

18

the two "cornerstones" of purposeful availment are voluntariness and foreseeability.  PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 19-20 (1st Cir. 2019).

In the event the plaintiff meets the burden to establish that the defendant's purposeful contacts with the forum were sufficient to support either general or specific jurisdiction, the burden shifts to the defendant to "present a compelling case," in light of the strength of the plaintiff's showing regarding the defendant's jurisdictional contacts, that the exercise of jurisdiction would not be reasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-478 (1985); see also Baskin-Robbins, 825 F.3d at 38.

a.   **Cardinal DiNardo in his Individual Capacity**

Dispensa alleges that Cardinal DiNardo works in Houston, Texas, the seat of the Archdiocese of Galveston-Houston. Dispensa does not allege that Cardinal DiNardo has ever resided in New Hampshire, worked in New Hampshire, or directed conduct toward New Hampshire or any New Hampshire resident.  Dispensa's only other allegations regarding Cardinal DiNardo relate to duties of care he allegedly owed Dispensa by virtue of his office.  Dispensa offers no allegations or evidence regarding Cardinal DiNardo's individual-capacity conduct.

19

For his part, Cardinal DiNardo offers his affidavit stating that Dispensa was unknown to him prior to this litigation.  Doc. no. 13-2 at ¶ 4.  The affidavit states that Cardinal DiNardo owns no assets in New Hampshire, has no regular contact with New Hampshire or any New Hampshire residents, does not supervise or oversee the employment of any persons in New Hampshire, and does not recall ever visiting New Hampshire.  Id. at ¶¶ 6-8.  The affidavit states further that Cardinal DiNardo has never worked as a clergyman in New Hampshire, in Massachusetts, or anywhere else in New England.  Id. at ¶ 5.

Cardinal DiNardo's uncontroverted evidence tends to establish that he is a resident of Texas with no material contacts to New Hampshire or to any New Hampshire resident; Dispensa's allegations do not suggest to the contrary.  There are, moreover, no jurisdictional allegations and no jurisdictional evidence with any tendency to establish either that Cardinal DiNardo had the requisite contacts with New Hampshire or that he deliberately targeted behavior towards this state.  It follows that Dispensa has not met his prima facie burden to establish that the court can exercise either general or specific personal jurisdiction over Cardinal DiNardo in his individual capacity.  Cardinal DiNardo's motion to dismiss for lack of personal jurisdiction is therefore granted, and

20

Dispensa's claims are dismissed without prejudice to the extent pled against Cardinal DiNardo in his individual capacity.

### b.    The Conference Defendants

As to Cardinal DiNardo in his official capacity, Dispensa alleges that he is the President of the Conference and that he works in Texas.  Dispensa further alleges that, by virtue of his office, Cardinal DiNardo (together with the Conference) is in a fiduciary relationship with Dispensa and owes Dispensa a fiduciary duty of care.  In addition, Dispensa alleges that Cardinal DiNardo is vicariously liable for Fr. Martin's actions undertaken within the scope of his employment as a Catholic priest, and that he owes Dispensa a duty of care in connection with Fr. Martin's employment.  Finally, Dispensa alleges that the Conference engaged in a conspiracy with other persons (specifically the Archdiocesan defendants) to conceal widespread sexual abuse of minors by Catholic priests, including the abuse Dispensa suffered at the hands of Fr. Martin.

The Conference defendants offer the affidavit of Theresa Ridderhoff, its Associate General Secretary.  Ridderhoff's affidavit states that the Conference is a non-profit corporation headquartered in and organized under the laws of the District of Columbia.  Doc. no. 14-2 at ¶¶ 2, 4.  The affidavit further

states that the Conference does not do business in New
Hampshire, does not own real or personal property in New
Hampshire, and does not maintain offices in New Hampshire.  Id.
at ¶¶ 8-10.

The uncontroverted evidence therefore tends to establish
that the Conference defendants have no material contacts to New
Hampshire or to any New Hampshire resident.  Again, Dispensa's
allegations do not suggest to the contrary, and he has not
proffered any jurisdictional evidence.  It follows that Dispensa
has not met his prima facie burden to establish the existence of
long-arm personal jurisdiction, whether general or specific,
over either of the Conference defendants.

### c.   __The Archdiocesan Defendants__

Dispensa alleges that the Archdiocese is a Massachesetts
religious corporation headquartered in Braintree, MA.  Dispensa
further alleges that Cardinal O'Malley works in Braintree.  He
alleges that the Archdiocesan defendants are in a fiduciary
relationship with him and therefore owe him a fiduciary duty of
care, that they are vicariously liable for Fr. Martin's actions
undertaken within the scope of his employment as a Catholic
priest, and that they owe Dispensa a duty of care in connection
with Fr. Martin's employment.  He further alleges that the

Archdiocesan defendants engaged in a conspiracy (together with
the Conference) to conceal widespread sexual abuse of minors by
Catholic priests, including the abuse Dispensa suffered at the
hands of Fr. Martin.

The Archdiocesan defendants offer evidence tending to
establish that, consistently with Dispensa's allegations, the
Archdiocese is a Massachesetts religious corporation
headquartered in Massachusetts, and that Cardinal O'Malley is
likewise a resident of Massachusetts.  Doc. no. 15-4 at 8.

There are therefore no allegations and no jurisdictional
evidence with any tendency to suggest either that the
Archdiocesan defendants are at home in New Hampshire or that
Dispensa's claims arise out of conduct they directed toward New
Hampshire.  Thus, Dispensa has not met his prima facie burden to
establish long-arm personal jurisdiction, whether general or
specific, over either of the Archdiocesan defendants.

### 2. __Statutory Personal Jurisdiction Over the Conference and the Archdiocesan Defendants__

Dispensa asserts two civil RICO claims in this action, each
of them against the Conference and the Archdiocesan defendants.
Virtually all courts to have considered the question have
concluded that the RICO statute contains a broad grant of
jurisdictional power.  The courts differ in their assessments of

23

the precise contours of that power, but there is general and widespread agreement that under at least some circumstances, the RICO statute permits courts to exercise personal jurisdiction over defendants lacking traditional minimum contacts with the forum.

Dispensa offers no allegations or evidence regarding personal jurisdiction, and it is unclear whether he intends that this court should exercise jurisdiction over any defendant pursuant to the RICO statute.  However, because Dispensa is pro se, the court presumes that he intends the broadest possible assertion of personal jurisdiction.  See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir. 1994).  The court must therefore determine whether, under RICO, it may properly exercise personal jurisdiction over the RICO defendants in this action.

The RICO provision implicating the courts' jurisdictional power is 18 U.S.C. § 1965.  Section 1965 provides as follows:

> (a) Any civil action or proceeding under [RICO] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any [civil RICO] action . . . in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served

24

in any judicial district of the United States by the
marshal thereof.

(c) In any civil or criminal action or proceeding
instituted by the United States under [RICO] in the
district court of the United States for any judicial
district, subpenas issued by such court to compel the
attendance of witnesses may be served in any other
judicial district, except that in any civil action or
proceeding no such subpena shall be issued for service
upon any individual who resides in another district at
a place more than one hundred miles from the place at
which such court is held without approval given by a
judge of such court upon a showing of good cause.

(d) All other process in any action or proceeding
under [RICO] may be served on any person in any
judicial district in which such person resides, is
found, has an agent, or transacts his affairs.

18 U.S.C. § 1965.  The majority of courts to have interpreted
the statute—including the Second, Seventh, Ninth, and Tenth
Circuits—have found that Section 1965(b) is the controlling
provision for jurisdictional purposes in civil RICO actions.
See PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 71
(2nd Cir. 1998); Lisak v. Mercantile Bancorp., Inc., 834 F.2d
668, 671 (7th Cir. 1987); Butcher's Union Local No. 498 v. SDC
Inv., Inc., 788 F.2d 535, 539 (9th Cir. 1986); Cory v. Aztec
Steel Bldg., Inc., 468 F.3d 1226, 1229 (10th Cir. 2006).  These
courts have found that, under Section 1965(b), a federal court
may exercise personal jurisdiction over a civil RICO defendant
otherwise lacking traditional minimum contacts with the forum
state, so long as both (i) personal jurisdiction over another

25

civil RICO defendant otherwise exists in the forum, and (ii) "the ends of justice require" that the court exercise personal jurisdiction over the civil RICO codefendant lacking the requisite contacts.  See Cory, 468 F.3d at 1229; PT United, 138 F.3d at 71; Lisak, 834 F.2d at 671; Butcher's Union, 788 F.2d at 539.

A minority of courts—including the Fourth and Eleventh Circuits—have found, without significant analysis, that the controlling jurisdictional provision of the statute is instead Section 1965(d).  See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997).  These courts interpret Section 1965(d) as conferring personal jurisdiction over any RICO defendant—including in civil RICO actions—so long as personal jurisdiction exists over another RICO codefendant in the forum, without need for inquiry into the ends of justice.  See Panama, 119 F.3d at 942; ESAB Group, 126 F.3d at 626.

At least one district court of the First Circuit has followed the majority approach of the Second, Seventh, Ninth, and Tenth Circuits, see Kalika, LLC v. Bos. & Maine Corp., Case No. CV 15-14043-GAO, 2019 WL 1276099, at *1, 7 (D. Mass. Mar. 20, 2019), and at least one has followed the minority approach

26

of the Fourth and Eleventh Circuits, see Bridge v. Invest Am., Inc., 748 F. Supp. 948, 952 (D.R.I. 1990).  The First Circuit has not yet weighed in on the question.  For the same reasons stated by the Second Circuit in PT United, 138 F.3d at 71-72, the court finds that the majority approach reflects a sound construction of the statute as a whole, one which is consistent with both its plain language and its evident purpose. Accordingly, the court adopts the majority approach and holds that Section 1965(b) permits the exercise of personal jurisdiction over a civil RICO defendant otherwise lacking the requisite contacts with the forum state, so long as both (i) personal jurisdiction exists in the forum over another civil RICO codefendant, and (ii) "the ends of justice require" that the court exercise personal jurisdiction over the RICO defendants lacking the traditionally requisite contacts.[7]

There are, in addition, differences among the circuits as to when "the ends of justice require" the exercise of personal jurisdiction over defendants lacking traditional minimum

---

[7]Where a federal statute provides for such potentially nationwide personal jurisdiction, the outer limits of the court's jurisdictional power are bounded by the due process clause of the Fifth Amendment, under which "a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." Swiss Am. Bank, 274 F.3d at 618.  Here, there does not appear to be any serious question as to whether any moving defendant is "at home" in the United States.

contacts with the forum.  On one end of the spectrum, the Ninth
Circuit has held that to establish the requisite ends of
justice, "the plaintiff must show that there is no other
district in which a court will have personal jurisdiction over
all the alleged co-conspirators." Butcher's Union, 788 F. 2d at
539 (emphasis supplied).  On the other end, the Tenth Circuit
has held that "the 'ends of justice' is a flexible concept
uniquely tailored to the facts of each case." Cory, 468 F.3d at
1232.  The court for the District of Massachusetts has followed
the Tenth Circuit's approach.  See Kalika, 2019 WL 1276099 at
*7.

This court likewise follows the Tenth Circuit's flexible
approach to determining what the ends of justice may require for
purposes of Section 1965(b).  To be sure, as virtually all
courts to have considered the question have noted, even under
the flexible approach, the existence of an alternative forum
will be a significant and often dispositive factor in making
that determination.  See, e.g., Cory, 468 F.3d at 1229; Lisak,
834 F.2d at 671; Brown v. Kerkhoff, 504 F. Supp. 2d 464, 496-497
(S.D. Iowa 2007); United Power Assn., Inc. v. L.K. Comstock &
Co., Case No. 3-89 CIV 766, 1992 WL 402906, at *3 (D. Minn. Oct.
27, 1992).

Having determined the appropriate standard for determining whether personal jurisdiction exists over a civil RICO defendant lacking traditional contacts with a forum, the court turns to the facts of this action.  For the reasons discussed above, Dispensa has not met his burden to establish that personal jurisdiction exists under traditional standards as to any RICO defendant in this action.  The court acknowledges that Dispensa has alleged sufficient facts to support personal jurisdiction over Fr. Martin, in that he has alleged that Fr. Martin is currently a resident of New Hampshire.  Doc. no. 1 at ¶ 6. However, he has not asserted either of his RICO claims against Fr. Martin; those claims are asserted only against the Conference, the Archdiocese, and Cardinal O'Malley.  Because Dispensa has not named Fr. Martin as a RICO defendant in this action, and because traditional personal jurisdiction is lacking as to each of the named RICO codefendants, Section 1965(b) personal jurisdiction is unavailable over the RICO defendants in this action.  See Cory, 468 F.3d at 1229; PT United, 138 F.3d at 71; Lisak, 834 F.2d at 671; Butcher's Union, 788 F.2d at 539; Kalika, 2019 WL 1276099 at *7.

Even if the court were to construe Dispensa's RICO claims as though pled against Fr. Martin, he has not met his burden to establish that the ends of justice require that the Conference,

29

the Archdiocese, or Cardinal O'Malley be haled into court in this forum.  This is largely because there exists an alternative forum in which (assuming the truth of Dispensa's allegations) personal jurisdiction would be available over the RICO defendants and which has a far closer relationship than New Hampshire to the parties' dispute.  That forum is the District of Massachusetts.

Two of the RICO defendants—the Archdiocese and Cardinal O'Malley—are at home in Massachusetts and consequently subject to general jurisdiction there.  Moreover, the alleged sexual abuse and assaults underlying all of Dispensa's claims took place in Massachusetts.  Assuming the truth of Dispensa's allegation that the Conference took affirmative steps to conceal Fr. Martin's abuse in Massachusetts, it appears likely that specific personal jurisdiction would be available over the Conference in connection with Dispensa's RICO claims.  In addition, evidence and witnesses material to Dispensa's RICO claims are far more likely to be located in Massachusetts than New Hampshire.

Because the ends of justice would be satisfied by litigation of Dispensa's claims in Massachusetts, they do not require that the Conference, the Archdiocese, or Cardinal O'Malley be haled into court in New Hampshire.  It follows that

30

this court may not properly exercise personal jurisdiction over those defendants pursuant to Section 1965(b).  Dispensa's claims are therefore dismissed without prejudice to the extent pled against the Conference, the Archdiocese, and Cardinal O'Malley.[8]

## III. Subject-Matter Jurisdiction Over Dispensa's Claims Against Fr. Martin

As noted, Dispensa asserts claims against Fr. Martin for sexual abuse of a minor, assault, breach of fiduciary duty, fiduciary fraud and conspiracy to commit fiduciary fraud, and intentional infliction of emotional distress.  All of Dispensa's claims against Fr. Martin arise under New Hampshire law.

The federal courts are courts of limited jurisdiction. See, e.g., Exxon Mobil Copp. v. Allapattah Servs., 545 U.S. 546, 552 (2005) (citing Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)).  As such, the courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen, 511 U.S. at 377; see also, e.g., Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64

---

[8]Because all of Dispensa's claims against the moving defendants are subject to dismissal on grounds of insufficient service and/or lack of personal jurisdiction, the court need not address the moving defendants' arguments regarding venue or subject-matter jurisdiction.

(1st Cir. 2018).  If a federal court "determines at any time
that it lacks subject-matter jurisdiction, the court must
dismiss the action."  Fed. R. Civ. P. 12(h)(3); see also In re
Olympic Mills Corp., 477 F.3d 1, 6 (1st Cir. 2007); Doyle v.
Huntress, Inc., 419 F.3d 3, 6 (1st Cir. 2005).

Absent circumstances not present here, federal subject-
matter jurisdiction must be based either on the presence of
complete diversity between the parties, see 28 U.S.C. § 1332(a),
or on the presence of an action arising under federal law, see
28 U.S.C. § 1331. Here, diversity jurisdiction over Dispensa's
state-law claims is unavailable, because Dispensa has alleged
that both he and Fr. Martin are residents of New Hampshire.  See
28 U.S.C. § 1332(a).  Federal question jurisdiction is likewise
unavailable over Dispensa's state-law claims, which are
creatures of New Hampshire law.  See, e.g., Caterpillar Inc. v.
Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l
Bank, 299 U.S. 109, 112-113 (1936)).

Where a plaintiff alleges both federal and state-law
claims, and the federal and state-law claims are sufficiently
closely related to form part of the same case or controversy,
federal courts may properly exercise supplemental jurisdiction
over the state-law claims.  See 28 U.S.C. § 1367(a).  Where, as
here, all federal claims are dismissed before an action reaches

trial, it is generally appropriate for a federal court to decline to exercise supplemental jurisdiction over any remaining state-law claims.  See 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law] claim ... if... the district court has dismissed all claims over which it has original jurisdiction"); Carnegie-Mellon Univ. v Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims").  Nothing about this case provides good cause for deviating from the general rule set forth in Carnegie-Mellon.

For these reasons, the court dismisses sua sponte Dispensa's state-law claims against Fr. Martin without prejudice for lack of subject-matter jurisdiction.


**CONCLUSION**

For the above reasons, Cardinal DiNardo's motion to dismiss (doc. no. 13), the Conference defendants' motion to dismiss (doc. no. 14), and the Archdiocesan defendants' motion to dismiss (doc. no. 15) are granted.  Dispensa's claims are therefore dismissed

without prejudice to the extent alleged against the Conference, Cardinal DiNardo, the Archdiocese, and Cardinal O'Malley.  In addition, the court dismisses sua sponte Dispensa's claims against Fr. Martin without prejudice for lack of subject-matter jurisdiction.  The court's disposition of Dispensa's claims shall not bar him from raising them in any other appropriate forum. The clerk's office is directed to enter judgment and close the case.

        SO ORDERED.


                                    _____
                                    Landya McCafferty
                                    United States District Judge

May 21, 2020

cc:  Counsel of Record